SACO BRICK COMPANY *vs.* J. P. EUSTIS MANUFACTURING COMPANY.

Suffolk.    November 11, 1910. — January 4, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Res Judicata. Pleading, Civil,* Declaration, Demurrer. *Contract,* Construction, Performance and breach.

The decision made in the suit in equity *J. P. Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212, 201 Mass. 391, that the contract on which that suit was founded was made by the Saco Brick Company with the J. P. Eustis Manufacturing Company and not with the Bruce-Merriam-Abbott Company, here was affirmed and was held to be conclusive between the parties.

Under R. L. c. 173, § 6, cl. 2, requiring that a declaration in a personal action " shall state concisely and with substantial certainty the substantive facts necessary to constitute the cause of action," the declaration upon a contract in writing need not set out all the details contained in the contract.

A declaration alleged that the plaintiff and the defendant entered into a contract in writing, of which a copy was annexed, whereby the defendant agreed to sell to the plaintiff a gas engine and the plaintiff agreed to pay therefor $1,750, that the defendant delivered a certain engine to the plaintiff and that the plaintiff paid the defendant therefor $1,750, but that the defendant " failed to comply with the contract in the following particulars." Here followed allegations as to the breaches complained of, and the declaration concluded with averments in regard to the damages sustained by the plaintiff. On demurrer, it was *held,* that this declaration set forth a cause of action clearly and properly stated.

Under R. L. c. 173, § 6, cl. 4, the declaration in an action of contract can include allegations of any number of breaches in one count, and the plaintiff is not confined to one form of statement in regard to any particular breach alleged.

In considering a demurrer to the declaration in an action of contract, it was *said,* that, if, according to the true construction of the contract, breaches were assigned improperly, the defective allegations could be demurred to specifically without demurring to the declaration as a whole : but in the present case no such ground of demurrer was alleged.

In a suit in equity by a manufacturing company against a brick company, the plaintiff sought to enjoin the defendant from proceeding with an action at law for the breach of a contract in writing for the sale by the manufacturing company to the brick company of a gasoline engine, the manufacturing company alleging that it signed the contract in its own name by mistake and that it signed only as the agent of a third corporation. A decree was made dismissing the bill on the ground that the contract sought to be reformed was made and was intended to be made between the manufacturing company and the brick company and not between the third corporation and the brick company. In the action at law by the brick company against the manufacturing company, thus unsuccessfully sought to be enjoined, the manufacturing company as defendant set up the equitable defense that the contract with the plaintiff was made not by it but by the third corporation for which the defendant was acting as agent. The plaintiff filed no replication to the alleged equitable defense, but the presiding judge ruled that the decree in the suit in equity was a bar to the alleged equitable defense, and no objection was made by the defendant that the plaintiff had not filed a replication of *res judicata*. *Held*, that, while the plaintiff might have pleaded the decree in the suit in equity in a replication of *res judicata*, yet, as no objection had been taken to its failure to do so, this court would regard the question as properly before them, and that the ruling of the judge was right, the fact, that the action at law in which the equitable defense was attempted to be set up was begun before the suit in which the decree was made, being no reason why the decree, which settled the question of fact conclusively between the parties, should not operate as a bar.

A contract for the purchase and sale of a gas engine contained an agreement on the part of the seller that the engine should be of the capacity of fifty-five horse power with an overload of ten per cent. In an action by the buyer against the seller for an alleged breach of the contract in supplying an engine of less power than required by the contract, it appeared that the engine delivered to the plaintiff had a gasoline attachment and was designed for use either with natural gas for fuel or arranged, as this one was, with gasoline fuel. It appeared that an engine which would develop fifty-five horse power and a ten per cent overload with natural or illuminating gas would develop much less power with gasoline. The contract provided that the engine should be " arranged for gasoline fuel," and no other fuel was referred to in the contract. It was testified without objection and recited in the bill of exceptions that " the only fuel contemplated by the parties to be used by the plaintiff in the operation of the engine was gasoline." *Held*, that the contract was not for a gas engine of fifty-five horse power warranted to develop an overload of ten per cent, but for a gas engine that would develop fifty-five horse power and an overload of ten per cent with gasoline fuel, and that a ruling to that effect was correct.

In an action for the alleged breach of a contract by which the defendant agreed to furnish the plaintiff with an engine which would develop with gasoline fuel a stipulated horse power, the defendant contended that the reason that the engine did not furnish the horse power stipulated in the contract was that the plaintiff failed to build the foundation for the engine in the manner specified in a certain blue print. There was no evidence and no contention that the plaintiff had not acted in good faith in building the foundation which he furnished. The defendant asked the presiding judge to rule that the fact that the plaintiff did not build such a foundation as the contract called for prevented his recovery in the action. The judge refused to give this ruling, and instead of it instructed the jury that, if the foundation furnished by the plaintiff " was just as good as that

specified in the blue print," a failure of the foundation to accord with the specifications was not a defense to the action. *Held*, that, assuming in favor of the defendant that the blue print and the foundation plan constituted a part of the contract and that it was intended and expected by the defendant that the foundation should be built by the plaintiff as therein specified, yet the building by the plaintiff of the foundation specified in the blue print was not a condition precedent to the defendant's undertaking that the engine when placed upon it and properly connected should develop with gasoline fuel the stipulated horse power, and that the instruction of the judge was at the least sufficiently favorable to the defendant.

MORTON, J.    This is an action to recover for certain alleged breaches of a written contract entered into between the defendant and the plaintiff for the sale and purchase of a gas engine. The defendant demurred to the declaration.    The demurrer was overruled and the defendant appealed.    The case came on for trial upon the merits and there was a verdict for the plaintiff. The case is here on the appeal from the order overruling the demurrer and on exceptions by the defendant to certain rulings and refusals to rule by the presiding justice at the trial on the merits.*

1.    We think that the demurrer was rightly overruled.    The grounds of demurrer relied on are that the declaration does not state concisely and with substantial certainty the substantive facts necessary to constitute the cause of action as required by R. L. c. 173, § 6, cl. 2, and that the contract contained in the written agreement was a contract not with the defendant company but with the Bruce-Merriam-Abbott Company, for which the defendant company was acting as agent.

As to the second ground relied on it is disposed of, we think, by the case between the same parties, the defendant here being plaintiff there, reported in 198 Mass. 212, and 201 Mass. 391. It was expressly held in the first case that the Eustis Manufacturing Company was liable as a party to the contract, and when the case was before this court again in 201 Mass. 391, it was pointed out that there were provisions in the contract inconsistent with liability on the part of the Bruce-Merriam-Abbott Company, and it was held that the decree dismissing the bill was well warranted on that and other grounds.    The contention

---

* The demurrer was heard and overruled by *Fox*, J.    The trial was before *Aiken*, C. J.

of the Eustis Manufacturing Company that the contract was with the Bruce-Merriam-Abbott Company and not with it must therefore be regarded as having been settled against it.

In regard to the other ground of demurrer it is to be observed that the statute does not require that in an action upon a written contract all the details contained in the contract shall be set out, but only that the substantive facts necessary to constitute the cause of action shall be stated, and that those shall be stated concisely and with substantial certainty. In the present case the declaration alleges that the plaintiff and defendant entered into a written contract of which a copy is annexed, whereby the defendant agreed to sell to the plaintiff a gas engine, and the plaintiff agreed to pay therefor $1,750 ; that the defendant delivered a certain engine to the plaintiff and the plaintiff paid the defendant therefor the sum of $1,750, but that the defendant "failed to comply with the contract in the following particulars." Then follow allegations as to the breaches complained of, and the declaration concludes with averments in regard to the damages sustained by the plaintiff. The cause of action is clearly stated and the breaches relied on are distinctly set forth. According to the express terms of the statute the plaintiff could include any number of breaches in the same count (R. L. c. 173, § 6, cl. 4), and it was not confined to one form of statement in regard to any particular breach alleged, but could state it in the alternative in different ways. If, according to the true construction of the contract, breaches were improperly assigned, they could be demurred to specifically without demurring to the declaration as a whole. *Montague* v. *Boston & Fairhaven Iron Works*, 97 Mass. 502. No such ground of demurrer was, however, alleged.

2. In its answer the defendant set up by way of equitable defense that it was intended and understood by and between the plaintiff and the defendant that the contract should be and was between the plaintiff and the Bruce-Merriam-Abbott Company, and that the contract ought not in equity to be enforced against the defendant. The first exception taken by the defendant at the trial was to a ruling made by the presiding judge at the request of the plaintiff that "The equitable defense was *res adjudicata;* and that it was not open to the defendant in this

action, and that no evidence should be introduced in support of it." We think that the ruling was right. The ground now set up by way of equitable defense to the present action was that on which equitable relief was sought by the defendant in the suit already referred to and the decree in that case which was against the defendant must be regarded as disposing once for all of the contention, whether made the ground of affirmative or defensive relief or advanced at law or in equity. The remedy was concurrent at law and in equity, but having elected to pursue the remedy in equity the defendant is bound by its election. *New York, New Haven, & Hartford Railroad* v. *Martin*, 158 Mass. 313, 315. *Nash* v. *D'Arcy*, 183 Mass. 30, 31. The fact that this action was begun before the suit reported in 198 Mass. 212, and 201 Mass. 391, did not prevent the plaintiff from setting up the judgment in that case as a bar to the equitable defense which the defendant sought to introduce in this case. The judgment could have been pleaded by the plaintiff by way of replication to so much of the defendant's answer as sets up the equitable defense. R. L. c. 173, § 33. See *Goodrich* v. *Bodurtha*, 6 Gray, 323. No objection was taken because it was not so pleaded, and it must be regarded therefore as having been properly before the court for the court to rule upon.

The next exception was to a ruling of the judge that " The contract requires the engine to be of the capacity of fifty-five horse power with an overload of ten per cent when operated by gasoline." We think that this ruling also was right. The contract provided that the defendant should " furnish and deliver F. O. B. cars Cleveland . . . one 55 H. P. Twin Cylinder vertical Gas Engine . . . same arranged for gasoline fuel, and to have air starting outfit." It also provided that " The engine shall be tested at our works and develop 55 actual brake H. P." The contract also contained the following guarantees on the part of the defendant, namely : " We will guarantee the engine to develop a 10% overload. Also guarantee the engine to operate between no load and full load without more than 2% variation in speed," and there was on the back of the blue print that was furnished by the defendant to the plaintiff the indorsement " 55 H. P. Gasoline." " There was evidence tending to show that the engine in question, with a gasoline attachment was

manufactured in Cleveland . . . and was shipped from there to and received by the plaintiff at Saco. . . . That it was designed for use with natural gas as a fuel, or, if arranged for, as it was, with gasoline fuel." It appeared "that an engine which would develop 55 H. P. and a 10 per cent overload with natural or illuminating gas would develop much less power with gasoline." "The only fuel contemplated by the parties to be used by the plaintiff" as the exceptions recite, "in the operation of the engine was gasoline." It is plain, we think, not only from the contract itself but also when interpreted in the light of the conduct of the parties, that what the parties were contracting for was an engine which should develop fifty-five horse power and an overload of ten per cent when operated with gasoline as a fuel. The contract expressly provides that the engine shall be "arranged for gasoline fuel." That is the only fuel referred to in the contract, and the natural construction and meaning is that the engine was intended to develop the specified horse power and overload with that fuel. There is nothing to show that the power for which it was to be tested was anything except power which would be created by the use of gasoline as a fuel. The fact, which was testified to without objection, that the only fuel contemplated by the parties was gasoline, also tends to show that the construction which we have given to the contract is the correct one. The contract was not for a gas engine of fifty-five horse power warranted to develop an overload of ten per cent, but for a gas engine that would develop fifty-five horse power and an overload of ten per cent with gasoline for fuel.

The third and last exception was to the refusal of the judge to rule as requested by the defendant that "The fact that the plaintiff did not build such a foundation as the contract calls for prevents any recovery in this action." Instead of the ruling thus requested the judge instructed the jury that "If the foundation furnished by the Brick Co." (the plaintiff) "was just as good as that specified in the blue print, the failure of the foundation to accord with the specification is not a defense in this action. If however the failure to build the foundation in the manner the blue print specified . . . was the reason why the engine did not furnish the horse power stipulated in the contract, the Brick Co." (the plaintiff) "cannot recover damages in this case." We

think that these instructions were sufficiently favorable to the defendant. We assume in favor of the defendant that the blue print and the foundation plan constituted a part of the contract, and that it was intended and expected by the defendant that the foundation should be built by the plaintiff as therein specified. But the building by the plaintiff of the foundation as specified in the blue print was not a condition precedent to the defendant's undertaking that the engine when placed upon it and properly connected should develop with gasoline fuel the stipulated horse power. If the engine did not develop the power called for, the defendant had a right to show, if it could, that the failure was due in whole or in part to the manner in which the foundation had been constructed, and to have the case decided accordingly. But, there being nothing to show and no claim being made that the plaintiff did not act in entire good faith in building the foundation as it did, it would have been error to instruct the jury as requested that if the plaintiff did not build the foundation as specified it could not recover. Under the instructions of the judge the jury could find for the plaintiff only in case they found that the foundation built by the plaintiff was "just as good as that specified in the blue print." As already observed, this was to say the least sufficiently favorable to the defendant.

*Order overruling demurrer affirmed; exceptions overruled.*

*G. C. Abbott*, for the defendant.

*F. L. Norton*, for the plaintiff.